GEOFFREY HANSEN
Acting Federal Public Defender
Northern District of California
SOPHIA WHITING
Assistant Federal Public Defender
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:   (415) 436-7700
Facsimile:    (415) 436-7706
Email:           Sophia_Whiting@fd.org

Counsel for Defendant Bordelon

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>INISHEA BORDELON<br>a.k.a Inishea Bodelon<br><br>Defendant. | **Case No.:** CR 20-324 VC<br><br>**DEFENDANT'S SENTENCING MEMORANDUM** |

## INTRODUCTION

On February 2, 2021, Inishea Bordelon accepted responsibility for her involvement in low-level drug dealing. *See* Presentence Investigation Report (PSR) ¶ 1-2. Between the time of the offense on January 21, 2020, and her arrest on July 11, 2020, Ms. Bordelon had already gained full-time employment and put her life on the right track, achieving stability for herself and her children. Ms. Bordelon agrees with the sentence recommend by U.S. Probation of time served and three years of supervised release, with six months of home confinement. We request the Court consider counting the two weeks of pretrial location monitoring Ms. Bordelon already completed towards the six months, so that she completes 5.5 additional months of home confinement. This will allow Ms.

Bordelon to complete monitoring before she is due to give birth,[1] which will avoid complications while she approaches and reaches her due date.

### BACKGROUND

Growing up, Ms. Bordelon's mother and sister were her whole world. *See* PSR ¶ 54-55, 59. Her father was not present. PSR ¶ 56. While she had five siblings total, four of them are significantly older, so they never had a close relationship. PSR ¶ 54. Her life was completely disrupted when, in the span of just a couple years, both her mother and her sister died far too young. PSR ¶ 59, 60. Her mother died after a battle with breast cancer when Ms. Bordelon was just 17 years old. PSR ¶ 59. Ms. Bordelon and her sister relied heavily on one another and remained living together in the family apartment. PSR ¶ 59. But less than three years later, her sister died from a stroke at just 21 years old. PSR ¶ 60. In the year prior, Ms. Bordelon and her sister had both given birth. *See* PSR ¶ 61. After her sister's death, Ms. Bordelon took custody of her sister's child in addition to her own. *Id*. She is the sole caregiver to those two children, now both 11 years old. *Id*.

As a result, when Ms. Bordelon was just 20 years old, she was left with an enormous responsibility while grieving the loss of the only family she ever really had. She acknowledges that did not always handle the pressure of this situation well. *See* PSR ¶ 19; Declaration of Sophia Whiting (Whiting Decl.) Ex. A. She looked to friends as sources of support, but she realizes now that they would get into trouble together and they did not have her best interests at heart. PSR ¶ 63. In addition to the instant offense, over the past decade she received three misdemeanor convictions and one misdemeanor diversion. PSR ¶ 35-38. She is now 32 years old, and has matured beyond the recklessness of her past. She no longer hangs out with former friends and prefers to stay home with her children. *See* PSR ¶ 63, 69; Whiting Decl. Ex. A. Her focus is on her family and her work. *Id*.

The last time Ms. Bordelon sold narcotics was to a federal confidential informant, at his request, on January 21, 2020. *See* PSR ¶ 13. A federal warrant was issued five months later, on June 8, 2020. PSR ¶ 4. Ms. Bordelon was arrested pursuant to that warrant on July 11, 2020. *Id*. Ms. Bordelon had not been involved in drug dealing for six months at the time of her arrest. Earlier that

---

[1] On May 3, 2021, after the Final PSR was filed, Ms. Bordelon informed counsel and U.S. Probation through counsel that she is approximately three months pregnant and due in November.

year, in February 2020, she got a job as Program Monitor with Swords to Plowshares.[2] PSR ¶ 73. She got additional work providing In Home Support Services (IHSS). PSR ¶ 74. Over the past year and three months, Ms. Bordelon has worked incredibly hard to achieve the financial stability and security that she has always wanted for herself and her children. This is especially important now that she is expecting a baby, due in November. She knows she is the only source of support for her children and that "she is trying to be a better role model." Whiting Decl. Ex. A.

After Ms. Bordelon's arrest, she was released pretrial and has performed nearly perfectly over the past 11 months, with the exception of accidentally missing two drug tests, which she quickly corrected and tested negative. PSR ¶ 5. She has never tested positive for drug use or otherwise violated the conditions of her pretrial release. *Id*. She was removed from location monitoring after two weeks because of her perfect compliance. *Id*.

## DISCUSSION

**I.      The Sentencing Guidelines (18 U.S.C. § 3553(a)(4))**

The government and Ms. Bordelon agree that the adjusted offense level is 15. PSR ¶ 30. She is in criminal history category (CHC) III. PSR ¶ 40. Her advisory guideline range is 24 to 30 months.

Although the Court must remain mindful of the sentencing guidelines recommendation, the advisory guideline range is not presumptively reasonable and it cannot be given any more or less weight than any other factor listed in section 3553(a). *United States v. Autery*, 555 F.3d 864, 872 (9th Cir. 2009); *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The court's paramount concern must be to "'impose a sentence sufficient, but not greater than necessary' to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment." *Carty*, 520 F.3d at 991. A sentence of time served and three years of supervised released, with six total months of home confinement, best aligns with the goals and factors of section 3553(a) for the following reasons.

---

[2] Since the Final PSR was filed, Ms. Bordelon has provided verification of employment of both Swords to Plowshares and IHSS.

## II. Ms. Bordelon's History and Circumstances Warrant a Downward Variance (18 U.S.C. § 3553(a)(1))

As detailed in the Background section above, Ms. Bordelon's history and circumstances counsel a downward variance from the advisory range. *See* 18 U.S.C. § 3553(a)(1). She has been responsible for herself since she was just 17 years old, and responsible for two children since age 20. This pressure, combined with a poor support system and difficulty securing employment, led Ms. Bordelon to the regrettable decision to be involved in low-level drug distribution to support her family. But Ms. Bordelon is eager to lead a legitimate life, and that is exactly what she started to do before she was charged in this case, and has continued to do since.

Ms. Bordelon regrets her past criminal activity, and recognizes that this offense does not stand alone. She ultimately only lands in CHC III, though, based on two minimal prior incidents: (1) a successful diversion resulting in dismissal, PSR ¶ 36, and (2) a reckless driving conviction, PSR ¶ 37. First, a diversionary disposition is only counted if there is a finding or admission of guilt in a judicial proceeding. USSG §4A1.2(f). We recognize there was a finding of guilt, and withdraw the objection in the PSR Addendum, ¶ 6, but maintain that this is a minor offense that was ultimately dismissed. Second, reckless driving offenses are not counted unless they received a term of probation of more than one year. USSG §4A1.2(c). In this case, Ms. Minner received two years court probation (i.e. unsupervised probation), which is in practice a lesser sentence than one year of standard supervised probation. While the sentencing guidelines do not discuss this supervised/unsupervised distinction, she ultimately received a very minimal sentence for a minor offense. If just one of these offenses were not counted, Ms. Minner would have three points and fall into CHC II.  The sentencing guidelines recognize a downward departure may be warranted where the criminal history category "substantially over-represents the seriousness of the defendant's criminal history" pursuant to USSG §4A1.3(b)(1), and a downward variance would certainly be appropriate.

Ms. Bordelon will not continue to commit crimes, and she has a proven track record while on pretrial release. Ms. Bordelon had her own wakeup call after the offense but before being charged, and the experience of suffering a federal felony conviction has certainly reinforced the lesson she had already learned—if she continues to break the law, she will be taken away from her children. She has now been working full time for 15 months, with a second job as a care provider, while raising two

DEFENDANT'S SENTENCING MEMORANDUM
*BORDELON*

4

11-year-olds. She is also now pregnant. A custodial sentence is not appropriate given her past, her extraordinary success on pretrial release, and her current circumstances.

### III. A Downward Variance is Appropriate to Reflect the Severity of the Offense and Provide Just Punishment (18 U.S.C. § 3553(a)(2)(A))

This is Ms. Bordelon's first felony conviction. That alone is a substantial punishment, given the collateral consequences and stigma of a felony conviction. Furthermore, a downward variance is warranted because this is a less serious offense compared with other federal felonies. *See* 18 U.S.C. § 3553(a)(2)(A). Mr. Bordelon takes responsibility for her criminal conduct and recognizes that selling any amount of drugs negatively impacts public health. However, federal sentencing laws "that were designed to focus penalties on the most serious drug traffickers have resulted in long periods of imprisonment for many offenders who performed relatively minor roles in the drug trade." Collins and Vakharia, *Criminal Justice in the Fentanyl Era: One Step Forward, Two Steps Back*, Drug Policy Alliance, 3 (January 2020).[3]

The fact is that hand-to-hand drug sales are—or should be—a minor offense compared to the vast majority of federal prosecutions, including drug prosecutions. Federal drug cases were intended to present more serious facts, such as substantially larger quantities of controlled substances, weapons, or an organized drug trafficking operation. Ms. Bordelon also would face a lower offense level, and therefore guidelines range, had she not provided the quantities specifically requested by the government agent, a confidential informant, in this case. Additionally, her offense level is heightened by the continued, racially discriminatory, disparity between crack cocaine and powder cocaine, which is currently 18 to 1.[4] Had the offense involved powder cocaine, Ms. Bordelon's guidelines range would be 10 to 16 months. A variance is appropriate because Ms. Bordelon was ultimately at the lowest levels of the drug trade.

---

[3] Available at https://drugpolicy.org/sites/default/files/dpa-cj-reform-fentanyl-era-v.3_0.pdf.
[4] "While the Fair Sentencing Act [reducing the disparity from 100:1 to 18:1] was a major improvement, the 18:1 measure is still an arbitrary difference that cannot be defended. There simply is no sound scientific reason to punish crack and powder cocaine offenses differently. For many Americans, especially Black Americans, the unequal treatment of crack and powder cocaine offenses is the most glaring example of racial discrimination in the criminal justice system." Ring and Rice-Minus, *Why do we still punish crack and powder cocaine offenses differenctly?*, The Hill, (March 3, 2021), https://thehill.com/opinion/criminal-justice/540816-why-do-we-still-punish-crack-and-powder-cocaine-offenses-differently.

## IV. A Sentence of Home Confinement Affords Adequate Deterrence and Addresses Safety Concerns (18 U.S.C. §§ 3553(a)(2)(B) and (C))

Public protection has already been accomplished in this case through Ms. Bordelon's changed behavior, demonstrated by 15 months of legitimate employment and law-abiding conduct. Three years of federal supervision, with 5.5 additional months of location monitoring, will ensure that Ms. Bordelon's positive conduct continues. Federal supervision with home confinement is also a large deterrent for Ms. Bordelon, as it provides more monitoring than any prior sentence and is a significant restriction on her liberties. Ms. Bordelon knows that she does not have room for mistakes while on supervised release because of the potential consequences for herself and her family.

## V. A Sentence of Time Served and Home Confinement Provides Punishment and is Appropriate in Light of the Sentences Available (18 U.S.C. § 3553(a)(3))

The alternative to home confinement is additional incarceration, and that is simply not practical or just under the circumstances. Unlike many defendants that come before this Court, Ms. Bordelon is the *sole* care provider for two minor children and she is pregnant. Especially in light of the other 3553(a) factors discussed above, location monitoring will accomplish the goals of sentencing without leaving two children parentless and forcing a pregnant woman into an ill-equipped prison environment in the midst of a pandemic.

## VI. Ms. Bordelon Agrees to the Vast Majority of Recommended Conditions, with Two Objections

First, Ms. Bordelon objects to recommended special condition 2, treatment for drug and alcohol abuse, as unnecessary and unsupported by the record. Ms. Bordelon has been tested for nearly a year and has never tested positive for any substance, including marijuana. Ms. Bordelon will be subject to the standard testing condition, which requires at least two random tests. Should a problem ever come to light through standard testing, a treatment program may be appropriately recommended, but at this time treatment is not necessary and would take time away from Ms. Bordelon's responsibilities at work and as a single mother.

Second, Ms. Bordelon objections to recommended special condition 4, because her workplace is in the proposed stay-away zone. She has worked there for 15 months without issue.

DEFENDANT'S SENTENCING MEMORANDUM
*BORDELON*
6

## CONCLUSION

For the aforementioned reasons, Ms. Bordelon respectfully requests the Court sentence her to time served and three years of supervised released, with a condition of 5.5 additional months (6 months total) of home confinement.

Dated:   May 4, 2021                              Respectfully submitted,

GEOFFREY HANSEN
Acting Federal Public Defender
Northern District of California

                    /S
SOPHIA WHITING
Assistant Federal Public Defender